1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11   JOSE ORDAZ, on behalf of himself, all
      others similarly situated, and the
12   general public,

13             Plaintiff,

14        v.

15   MCLANE/SUNEAST, INC., a Texas
      corporation;
16   MCLANE COMPANY, INC., a Texas
      corporation;
17   MCLANE FOODSERVICE, INC., a
      Texas corporation;
18   MCLANE FOODSERVICE
      DISTRIBUTION, INC., a North
19   Carolina corporation;
      MCLANE BEVERAGE
20   DISTRIBUTION, INC., a Texas
      corporation; and
21   DOES 1–50, inclusive,

22             Defendants.

23

Case No. 5:21-cv-01591-JWH-SPx

**ORDER DENYING MOTION OF
PLAINTIFF TO REMAND
PURSUANT TO 28 U.S.C. § 1447
[ECF No. 11]**

24
25
26
27
28

Before the Court is the motion of Plaintiff Jose Ordaz to remand this case to San Bernardino County Superior Court.[1]  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[2] the Court orders that the Motion is **DENIED**, for the reasons set forth herein.

## I.  BACKGROUND

Ordaz worked for Defendants McLane/Suneast, Inc. ("MSE"); McLane Foodservice, Inc.; McLane Foodservice Distribution, Inc.; and McLane Beverage Distribution, Inc. as a non-exempt hourly maintenance mechanic from July 2019 through January 2021.[3]  On March 29, 2021,[4] Ordaz filed a putative class action Complaint on behalf of himself and putative class members ("PCMs") against Defendants[5] in which he asserted six claims for relief: (1) violation of Cal. Lab. Code §§ 226.7, 512, and 1198 (unpaid meal and rest period premiums); (2) violation of Cal. Lab. Code §§ 510, 1194, 1197, and 1198 (failure to pay all wages earned for all hours worked at the correct rates of pay); (3) violation of Cal. Lab. Code §§ 1198 and 2802 (unreimbursed business expenses); (4) violation of Cal. Lab. Code § 226 (non-compliant wage

---

[1]     Pl.'s Mot. to Remand Pursuant to 28 U.S.C. § 1447 (the "Motion") [ECF No. 11].

[2]     The Court considered the following papers:  (1) Compl. (the "Complaint") [ECF No. 1-1]; (2) the Notice of Removal (the "Removal Notice") [ECF No. 1]; (3) the Motion (including its attachments); (4) Defs.' Opp'n to the Motion (the "Opposition") [ECF No. 16]; (4) First Am. Compl. (the "Amended Complaint") [ECF No. 21]; and (5) Pl.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 26].

[3]     Complaint ¶ 22.

[4]     Hereinafter, all dates are in the year 2021 unless otherwise noted.

[5]     Removal Notice ¶ 1.

statements); (5) violation of Cal. Lab. Code §§ 201, 202, and 203 (final wages not timely paid); and (6) violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*[6]

On September 17, Defendants removed this action to this Court.[7]  Ordaz filed the instant Motion on October 15.[8]  Defendants opposed on November 1,[9] and Ordaz replied on November 18.[10]

## II.  LEGAL STANDARD

A defendant may remove an action from state court to federal court if the plaintiff could have originally filed the action in federal court.  *See* 28 U.S.C. § 1441(a).  CAFA provides federal subject matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members; (2) the parties are minimally diverse; and (3) the aggregate amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d)(2) & (5)(B).  "Congress intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

The party seeking removal bears the burden of establishing federal subject matter jurisdiction under CAFA.  *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006).  When the amount in controversy is not apparent from the face of the complaint, the removing party "must prove by a preponderance of the evidence that the amount in controversy requirement [under CAFA] has been met."  *Id.*  Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  However, when a plaintiff contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required. . . ."

---

[6]      Complaint ¶¶ 29-92.  Ordaz has since amended his Complaint by adding a seventh claim for relief for civil penalties under Cal. Lab. Code §§ 2698, *et seq.*  *See* Amended Complaint ¶¶ 94-102.

[7]      *See generally* Removal Notice.

[8]      *See generally* Motion.

[9]      *See generally* Opposition.

[10]      *See generally* Reply.

*Dart Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).  "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  *Id.*

Removal under CAFA must also be timely.  A defendant must remove the case to federal court "(1) during the first thirty days after the defendant receives the initial pleading, or (2) during the first thirty days after the defendant receives 'an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable.'"  *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1189 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(b)(1) & (b)(3)) (italics omitted).  The first time period under 28 U.S.C. § 1446(b)(1) is "triggered if the case stated by the initial pleading is removable on its face," and the second time period under 28 U.S.C. § 1446(b)(3) is "triggered if the initial pleading does not indicate that the case is removable, and the defendant receives a copy of an amended pleading, motion, order or other paper from which removability may first be ascertained."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F. 3d 876, 885 (9th Cir. 2010) (internal quotation marks and citations omitted).

## III.  DISCUSSION

Ordaz challenges Defendants' removal on two grounds:  (1) the removal was untimely; and (2) Defendants have failed to prove, by the preponderance of the evidence, that the amount in controversy exceeds $5 million.  The Court evaluates each challenge in turn.

**A.    <u>Timely Removal</u>**

Ordaz argues that Defendants failed to remove on a timely basis.[11]  He notes that he served the initial Complaint and summons on Defendants on or around May 7.[12]  However, Defendants did not remove until "134 days" later.[13]

The procedures for removal of an action from state court to federal court are set forth in 28 U.S.C. § 1446.  Subsection (a) of that statute provides generally that a defendant seeking to remove a civil action shall file a notice of removal in the district court.  *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013).  That statue also imposes restrictions on removal, including a requirement that the defendant must file its notice of removal within 30 days of its receipt from the plaintiff of an initial pleading or other document from which it is ascertainable that the case is removable.  *Id.* (quoting 28 U.S.C. § 1446(b)(1) & (3)).

The first question is whether it was clear from the face of the Complaint that the case could be removed.  The Court finds it was not.  Even though Ordaz stresses that there was facially complete diversity of citizenship,[14] the amount in controversy was indeterminate.[15]  Courts in the Ninth Circuit have held that "indeterminate" pleadings do not trigger the 30-day clock under 28 U.S.C. § 1446(b) unless the grounds for removal are "revealed affirmatively in the initial pleading."  *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013).  Courts take this approach to "avoid saddling defendants with the burden of investigating jurisdictional facts . . ."  *Id.*  Because the Complaint did not readily demonstrate removability, Ordaz cannot claim that the clock

---

[11]    Motion 5:18-8:13.

[12]    *Id.* at 5:25-26.

[13]    Reply 2:7.

[14]    *See, e.g.*, Motion 6:2-3 & 7:18-19.

[15]    *See generally* Complaint.

began to run ***unless*** there was some "amended pleading, motion, order or other paper" that demonstrated the case was—or had become—removable. 28 U.S.C. § 1446(b)(3).

Under this exception, Ordaz contends that "other papers" provided Defendants with notice of removability.[16] Specifically, Ordaz points to papers filed in the related case *Murdock v. McLane Suneast, Inc.*, Case No. 5:21-cv-01591-JWH-SP, including: "McLane/Suneast, Inc.'s Notice of Removal (filed on April 7, 2021), McLane/Suneast, Inc.'s Opposition to Plaintiff's Motion to Remand (filed on May 28, 2021), the Declaration of Stephanie McAtee In Support of McLane East's Opposition to Plaintiff's Motion to Remand (filed on May 28, 2021), and McLane/Suneast, Inc.'s Objections To and Request to Strike Portions of Plaintiff's Reply (filed on June 8, 2021)" (collectively, the "*Murdock* Papers").[17]

There are three flaws with this argument. First, as Defendants point out, they did not receive those papers from Ordaz.[18] As the Ninth Circuit has noted, "28 U.S.C. § 1446(b) requires the receipt by the defendants of a paper in the action from which removability may be ascertained." *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 779 (9th Cir. 1994) (italics omitted). Since Defendants did not receive any of these papers from Ordaz, Ordaz simply cannot rely on this exception. In view of that infirmity, the Court need not consider whether the *Murdock* Papers would otherwise qualify as "other papers" under 28 U.S.C. § 1446(b)(3).

Second, even if Ordaz ***had*** delivered those papers to Defendants, Ordaz cites no case law ***directly*** on point suggesting that notice of removal in a related case (with different plaintiffs but a common defendant) falls within the "other

---

[16]   Motion 6:26.
[17]   *Id*. at 6:21-26.
[18]   Opposition 6:18-7:10.

-6-

papers" exception.[19]  Indeed, the Court is not aware of any authority from this circuit or any others that currently supports such an interpretation, even if the idea carries some persuasive force.  *Cf.* 14C Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 3731 (Rev. 4th ed. 2021) (collecting cases on "other papers").

Third, even if the *Murdock* Papers qualified as eligible materials for the Court's consideration, the Court is skeptical that they would establish unequivocally that the case was removable.  The Ninth Circuit recently held that "an amended pleading, motion, order, or other paper must make a ground for removal unequivocally clear and certain before the removal clock begins under the second pathway of [28 U.S.C.] § 1446(b)(3)."  *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021).  Under this revised articulation, it is unlikely that the *Murdock* Papers would meet such an exacting standard because the factual predicates and the parties involved are not identical, even if many similarities exist.  Therefore, the Court rejects Ordaz's argument that Defendants' removal was untimely.

## B.   **Amount in Controversy**

Ordaz mounts a factual challenge to Defendants' estimated amount in controversy.[20]  A plaintiff may contest the amount in controversy by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations.  *See Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020).  "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Id.* (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).  In contrast, a factual attack "contests the truth of the . . . allegations" themselves.  *Id.* (citation

---

[19]    *See generally* Motion.

[20]    *Id.* at 9:21-23.

1  omitted).  "When a plaintiff mounts a factual attack, the burden is on the

2  defendant to show, by a preponderance of the evidence, that the amount in

3  controversy exceeds the $5 million jurisdictional threshold."  *Harris v. KM*

4  *Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020).

5       Defendants calculate an amount in controversy of $32,478,110.78, merely

6  for PCMs who worked for MSE based upon Ordaz's first, second, fourth, and

7  fifth claims for relief (before attorneys' fees).[21]  The Court need not validate

8  each of those figures to find that removal was proper.  If the Court finds that

9  Defendants have proven—by a preponderance of the evidence—that even a

10  subtotal of these claims exceeds $5 million, then it must deny Ordaz's motion.

11       Defendants begin their Opposition with a discussion of waiting time

12  penalties pursuant to Cal. Lab. Code § 203—Ordaz's fifth claim for relief.

13  Defendants estimate that the amount in controversy is $7,508,246.40.[22]  To

14  calculate this sum, several assumptions and datapoints are required; *e.g.*, the

15  hourly rate, the numbers of hours worked per day, the penalty length,[23] and the

16  number of fully separated PCMs.[24]

17       Regarding the hourly rate, Defendants offer a declaration from MCI's

18  Director of Payroll, who testifies that the weighted average of the effective

19  hourly rate was $20.94.[25]  Ordaz does not contest this fact.

20       Next, Defendants use eight hours of work per employee per workday in

21  their calculations.  The Court finds that assumption to be reasonable because

22

---

23  [21]    Opposition 25:20.

24  [22]    *Id*. at 13:13.  The Court calculated this figure based upon the assumptions described in the Opposition.

25  [23]    When an employer willfully fails to pay wages in a timely manner upon an employee's separation, the employee is entitled to receive her normal wages for

26  every day that the wages are late, up to a maximum of 30 days.  *See* Cal. Lab. Code § 203.

27  [24]    Opposition 13:11-16.

28  [25]    Decl. of Stephanie McAtee in Supp. of the Opposition (the "McAtee Declaration") [ECF No. 16-1] ¶ 13(b).

1   Ordaz alleges that he and other PCMs worked *more* than eight hours a day,[26] and

2   Defendants' records appear consistent with that figure.[27]   Despite Ordaz's

3   challenge,[28] the eight-hour-per-workday figure is reasonable for waiting time

4   penalty calculations.  *See Calderon v. BKB Constr., LP*, 2017 WL 2618094, at *6

5   (N.D. Cal. June 16, 2017) (finding it reasonable for a defendant to assume that

6   the plaintiff worked a minimum of eight hours per day when the plaintiff's

7   complaint alleged that he worked in excess of eight hours per day); *see also*

8   *Ruano v. Sears Roebuck & Co.*, 2015 WL 6758130, at *4 (C.D. Cal. Nov. 5, 2015)

9   (noting that a "declaration from a person with knowledge of the relevant data is

10  clearly an appropriate form of evidence").

11         The Court also finds it reasonable for Defendants to assume the

12  maximum 30-day penalty because Ordaz neither qualifies nor tempers his

13  allegations in this respect.[29]   Indeed, Ordaz asserts that it was part of

14  Defendants' "policies and practices" to fail to pay Ordaz and PCMs all of their

15  earned and unpaid wages on a timely basis.[30]   Those allegations matter, because

16  Ordaz is ultimately "the master of [his] claim."  *Caterpillar Inc. v. Williams*, 482

17  U.S. 386, 392 (1987) (internal quotations omitted).  If Ordaz wanted to avoid

18  removal, then he "could have alleged facts specific to [his] claims which would

19  narrow the scope of the putative class or the damages sought."  *Muniz v. Pilot*

20  *Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (citing

21  *Caterpillar*, 482 U.S. at 392); *see also Vasquez v. RSI Home Prod., Inc.*, 2020 WL

22  6778772, at *9 (C.D. Cal. Nov. 12, 2020) ("In the absence of any such limiting

23

24  ---

    [26]     Complaint ¶ 24.

25  [27]     *See* <u>McAtee Declaration</u> ¶ 10(b)(ii)(3) (noting an average of 8.01 recorded
    hours per workday, which excludes of any recorded non-working hours, such as
26  sick time or paid time off).

27  [28]     Motion 12:1-7.

    [29]     *See, e.g.*, Complaint ¶¶ 25, 26, 53-55, & 82-84.

28  [30]     *Id.* at ¶ 85.

allegation, coupled with the allegations regarding [defendant's] "pattern and practice" of wage violations and the number of hours worked by [plaintiff] and the PCMs, [the defendant] reasonably assumes a universal violation rate"). Furthermore, other courts in this district generally find allegations of unpaid wages to be "implicit allegations of maximum damages for waiting time penalties." *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018) (collecting cases).

Finally, Ordaz challenges the assumption that all former employees are owed waiting time penalties for the statutory maximum of 30 days to be "unrealistic and unreasonable."[31] Defendants have provided evidence that 1,494 PCMs separated from employment with Defendants during the relevant period.[32] In view of Ordaz's unqualified allegations,[33] it is reasonable to extrapolate that each employee leaving Defendants' employment would have experienced at least one incident resulting in underpayment during the course of his or her employment. Tellingly, Ordaz neither walks back his allegations nor offers any contrary evidence in his Reply to suggest that Defendants' assumption is incorrect;[34] the Court finds it to be reasonable. *Accord Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013).

Defendants have therefore met their burden; further calculation is unnecessary. Indeed, in view of Ordaz's other claims and his request for attorneys' fees, it becomes a near certainty that the amount in controversy exceeds $5 million. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that a court must include future attorneys' fees recoverable by statute or contract when assessing whether the

---

[31]   Reply 10:13-14.
[32]   McAtee Declaration ¶¶ 10(b)(i), 11(b)(i), & 12(b)(i).
[33]   Complaint ¶¶ 23-26, 55, & 85.
[34]   *See* Reply at 10:13-11:4.

amount in controversy requirement is met).  "The preponderance standard does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden."  *Harris*, 980 F.3d at 701.  Rather, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."  *Ibarra*, 775 F.3d at 1198.

Ordaz invokes *Harris* for the proposition that the McAtee Declaration is insufficient.[35]  However, the Court finds that Ordaz misapplies *Harris* because the facts are distinguishable.  In *Harris*, the plaintiff sought to represent two sub-classes of PCMs who suffered meal and rest break violations.  *Id*. at 701.  The defendant then assumed, without any evidence, that those sub-classes operated in the same manner.  In contrast here, Ordaz has not identified any sub-classes, and Defendants have provided credible evidence from their Human Resources department regarding the class that Ordaz has putatively defined.  *See Ruano*, 2015 WL 6758130, at *4.

In the absence of a stipulation that the amount in controversy does not exceed $5 million, Defendants have met their burden to show that it is more likely than not that the statutory minimum is met.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    The Court **DENIES** the Motion of the Plaintiff to Remand.

---

[35]    *See id*. at 5:28-6:17; Motion 9:9-20.

2.      The Court **VACATES** the hearing on the Motion on December 17, 2021, at 11:00 a.m., but the Status Conference scheduled at that time remains on calendar.

**IT IS SO ORDERED.**

Dated: December 17, 2021



_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE

-12-